# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

JASON M. RUSSELL

    **Plaintiff,**

                                                                         Civil Action 2:11-cv-1158

    v.                                                        Judge George C. Smith

                                                                         Magistrate Judge E.A. Preston Deavers

**STATE OF OHIO,** *et al.,*

    **Defendants.**

## ORDER and REPORT AND RECOMMENDATION

This matter is before the Court for the initial screen of Plaintiff's Complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A to identify cognizable claims and to recommend dismissal of Plaintiff's Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2); *see also McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997). In addition, Plaintiff has filed two motions seeking a temporary restraining order and preliminary injunction. (ECF Nos. 3 and 4.) Finally, Plaintiff has contemporaneously applied for entry of default and moved for moved for default judgment. (ECF No. 2.) Having performed the initial screen, for the reasons set forth below, the undersigned **RECOMMENDS** that the Court **DISMISS** this action for failure to state claim upon which relief can be granted. Consistent with this recommendation, it is further **RECOMMENDED** that Plaintiff's motions for a temporary restraining order and preliminary injunction be **DENIED**. (ECF Nos. 3 and 4.) Finally, Plaintiff's Application for Entry of Default and Motion for Default Judgment is

**DENIED**.  (ECF No. 2.)

## I.

Plaintiff, Jason M. Russell, a state inmate who is proceeding with out the assistance of counsel, brings this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants,[1] seeking declaratory and injunctive relief.  As best the undersigned can discern, Plaintiff is alleging that Defendants have conspired against him to deny him access to the courts, refuse him Kosher meals, and encourage other inmates to harass him, steal his money, and destroy his property.

He alleges that these violations began in February 2008, when he was an inmate at LCI and continued after he was transferred to MCI.  Specifically, Plaintiff alleges that both the LCI and MCI Defendants have adopted policies that interfere with his access to courts, including a policy prohibiting the preparation of legal documents on "federally funded prison educational computers"; a policy to remove passwords used on prison computers to save legal research; a policy of deleting legal research saved on prison computers; and a policy limiting access to computers, books, materials, copy machines, and legal assistance.  He alleges that the MCI Defendants tampered with the prison computers, causing them to slow down or "freeze" when he was utilizing them to perform his legal research.  (*Id*.)  He further alleges that the LCI Defendants conspired to withhold or steal his legal mail and threatened him to "sign/backdate forged incoming inmate legal mail . . . ."  (Compl. 2, ECF No. 1-2.)  Similarly, Plaintiff alleges that the MCI Defendants conspired to steal exhibit stickers that this Court sent to him in

---

[1]Plaintiff names numerous Defendants in his Complaint, including fellow inmates and also employees of Ohio Department of Rehabilitation and Correction ("ODRC"), Lebanon Correctional Institution ("LCI"), and Mansfield Correctional Institution ("MCI"), all of whom he names in both their individual and official capacities.

November 2011.

In addition to his access to courts claims, Plaintiff alleges that the MCI Defendants have failed to provide him with sufficient nutritional Kosher meals in violation of his First Amendment rights. It appears that Plaintiff is also alleging that LCI employees conspired with another LCI inmate to have that inmate charge Plaintiff legal fees. Finally, Plaintiff alleges that a MCI employee conspired with MCI inmates to encourage other inmates to "harass, annoy, aggravate, and anger Plaintiff" and to steal or destroy Plaintiff's personal property when he was not in his cell to protect it. (Compl. 3, ECF No. 1-2.)

One day after filing his Complaint, Plaintiff contemporaneously applied for entry of default and moved for moved for default judgment. (ECF No. 2.) In his filing, he asserts that Defendants failed to plead or otherwise defend.

Plaintiff, in his first motion for a temporary restraining order and preliminary injunction, complains generally of retaliation, asserting that ODRC, MCI, and LCI policymakers have conspired against him to make policies that interfere with his access to courts. He references, among other things, Defendants' purportedly restrictive policies concerning computer usage. He requests that this Court "preserve the status quo" by "'freezing time' concerning post-conviction remedies/recourses lost during incarcerated time period (or possibly discharge [him] from custody of State)." (Pl.'s First Mot. for Inj. Relief 6, ECF No. 3.)

In his second motion for a temporary restraining order and preliminary injunction, Plaintiff again references Defendants' computer policies and also MCI's rules prohibiting inmates from removing legal books from the library to take to their housing cell. He recounts specific instances of the LCI librarian's alleged deletion of legal research he had saved on prison computers and an instance in which a LCI Defendant purportedly stole his legal mail. He also

3

alleges that the MCI librarian "destroy[ed] the computer's password functions." (Pl.'s Second Mot. for Inj. Relief 6, ECF No. 4.) He maintains that these policies and actions are the product of Defendants' conspiracy to violate his First Amendment rights. Plaintiff requests that the Court remove him from prison custody and place him instead in Court custody. He also asks that the Court permit him to now pursue a malicious prosecution claim even though that claim is barred by the applicable statute of limitations. Finally, he asks that the Court order another inmate to return money Plaintiff purportedly paid to him for assistance in preparing legal documents.

## II.

### A. Default Judgment

Plaintiff's Motion for Default Judgment, is **DENIED** as premature. (ECF No. 2.) Plaintiff sought an entry of default and default judgment just one day after he filed his Complaint. Because the Court has not yet ordered service of Plaintiff's Complaint, Defendants' deadline for answering or otherwise responding to Plaintiff's Complaint has not expired. Thus, at this juncture, Plaintiff's Motion for Default Judgment is premature.

### B. Initial Screen

#### 1. Standard

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id*. at 31 (quoting *Neitzke v. Williams*, 490

U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e)[2] as part of the statute, which provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--
>
>   \*   \*   \*
>
> (B) the action or appeal--
>
>   (i) is frivolous or malicious;
>
>   (ii) fails to state a claim on which relief may be granted; or . . . .

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31; *see also* 28 U.S.C. § 1915A (requiring the Court to screen a prisoner's complaint "as soon as practicable" and dismiss any portion of a the complaint if it is frivolous, malicious, or fails to state a claim). Thus, § 1915(e) and § 1915A require *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted.

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Fed. R. Civ. P. 8(a). *See also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient. *Ashcroft v. Iqbal*, 566 U.S. 662, 676 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, a complaint will not "suffice if it tenders 'naked assertion[s]'

---

[2]Formerly 28 U.S.C. § 1915(d).

5

devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In addition, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont County Sheriff's Dept.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

    **2.**    **Application**

        **i.**    **LCI Defendants**

Applying the foregoing, the undersigned recommends dismissal of Plaintiff's claims against the LCI Defendants for a number of reasons, including *res judicata*, mootness, and failure to state a claim.

First, the undersigned concludes that the doctrine of *res judicata* or claim preclusion operates to bar Plaintiff's claims against the LCI Defendants. Under the doctrine of *res judicata* or claim preclusion, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. U.S.*, 440 U.S. 147, 153 (1979). The United States Court of Appeals for the Sixth Circuit has instructed that *res judicata* requires proof of the following four elements: "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent

6

action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995). "The purpose of *res judicata* is to promote the finality of judgments, and thereby increase certainty, discourage multiple litigation, and conserve judicial resources." *Westwood Chemical Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981).

In the instant action, with regard to his claims against the LCI Defendants, Plaintiff simply reasserts the same claims, causes of action, and injuries arising out of the same facts that he alleged in *Russell v. Bailey*, Case No. 1:09-cv-878, filed in the United States District Court for the Southern District of Ohio Western Division ("878 Case"). Specifically, in the 878 Case, as in the instant case, Plaintiff alleged that LCI employees conspired against him to violate his First Amendment right of access to the courts by depriving him of meaningful access to the law library and by deleting legal research and documents that he had saved to the prison's computer, which caused him to miss court filing deadlines. Plaintiff initiated the 878 Case in December 2009. Although the 878 Case survived the initial screen, the Court ultimately adopted the recommendation of the United States Magistrate Judge that the defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) be granted. (878 Case, ECF No. 46.) *See Harrison v. Randolph*, No. 201-cv-1082, 2001 WL 1678791, at *1 (S.D. Ohio Dec. 31, 2001) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 503 (2001)) ( "A dismissal with prejudice acts as an adjudication on the merits and a bar to any further action between the parties on the claim."). The undersigned acknowledges that the instant action contains a more detailed recitation of the facts. Nevertheless, Plaintiff's claims against the LCI Defendants in the instant case are duplicative of the claims he raised in the 878 Case as the claims arose out of the same alleged events and policies. *See Wilkins v. Jakeway*, 183 F.3d 528

7

(6th Cir. 1999) (discussing the applicability of *res judicata* in situations arising from the same factual situation, regardless of whether the Plaintiff offers different theories of the case). In sum, the undersigned concludes that the doctrine of *res judicata* operates to bar the claims Plaintiff asserts against the LCI Defendants in the instant action. Based upon this conclusion, the undersigned recommends dismissal of these claims.

Second, the undersigned recommends dismissal of Plaintiff's claims against the LCI Defendants because these claims are moot. The Court properly raises the jurisdictional issue of mootness *sua sponte*. *See North Carolina v. Rice*, 404 U.S. 244, 246 (1971) ("Mootness is a jurisdictional question because the Court is not empowered to decide moot questions or abstract propositions . . . ." (internal quotations marks and citations omitted)); *Berger v. Cuyahoga Cnty. Bar Ass'n*, 983 F.2d 718, 721 (6th Cir. 1993) ("Questions of jurisdiction are fundamental matters which [a court] may review sua sponte.").

Article III of the United States Constitution limits a federal court's exercise of judicial power to actual, ongoing "Cases" or "Controversies." U.S. Const. art. III, § 2, cl. 1. The case-or-controversy requirement of Article III subsists throughout all stages of the litigation. *U.S. v. Juvenile Male*, 131 S.Ct. 2860, 2864 (2011) (internal quotation marks and citation omitted) ("It is a basic principle of Article III that a justiciable case or controversy must remain extant at all stages of review, not merely at the time the complaint is filed."). The doctrine of mootness is a corollary of Article III's case-or-controversy requirement. "The mootness doctrine provides that although there may be an actual and justiciable controversy at the time the litigation is commenced, once that controversy ceases to exist, the federal court must dismiss the action for want of jurisdiction." 15 James Wm. Moore et al, Moore's Federal Practice § 101.9, at 101–238 (3d ed. 2011).

When an inmate files suit against prison officials at the institution of his incarceration based upon those officials' wrongful conduct, seeking declaratory and injunctive relief, and that inmate is subsequently transferred or released, courts routinely dismiss the declaratory and injunctive relief claims as moot. *Sossamon v. Texas*, 131 S.Ct. 1651, 1669–70 (2011) (citations omitted) ("A number of . . . suits seeking injunctive relief have been dismissed as moot because the plaintiff was transferred from the institution where the alleged violation took place prior to adjudication on the merits."); *see, e.g., Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (concluding that inmate's claims for declaratory and injunctive relief were rendered moot upon inmate's transfer from the prison about which he complained); *Abdur-Rahman v. Michigan Dep't of Corr.*, 65 F.3d 489, 491 (6th Cir. 1995) (inmate's request for injunctive relief mooted upon transfer from relevant prison); *Lavado v. Keohane*, 992 F.2d 601 (6th Cir. 1993) (same). This is because an inmate's transfer or release ends the alleged violations of his or her constitutional rights, which "render[s] the court unable to grant the requested relief." *Berger*, 983 F.2d at 724; *Fredette v. Hemingway*, 65 F. A'ppx 929, 931 (6th Cir. 2003) (concluding that an inmate's request for injunctive relief to prevent his transfer to another prison became moot upon the inmate's subsequent transfer because "the district court was unable to grant the relief requested"). "There is . . . an exception to the mootness doctrine for claims that are capable of repetition, yet evade review." *Fredette*, 65 F. A'ppx at 931. This narrow, capable-of-repetition exception is limited to situations in which "the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration" *and* "there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.* (internal quotation marks and citations omitted). The circumstances here do not fall within this exception.

Applying the foregoing principles to the instant case, the undersigned concludes that

9

Plaintiff's claims against the LCI Defendants—all of which seek only declaratory and injunctive relief—are moot. The Court's entry of equitable relief in Plaintiff's favor and against the LCI Defendants would have no effect on those Defendants' behavior towards him because they perform their duties at an institution where Plaintiff is not incarcerated. Put another way, an entry of equitable relief would accomplish nothing; ordering LCI officials to permit inmates to save information to prison computers would not impact Plaintiff.

Finally, to the extent Plaintiff seeks to bring a claim against an LCI employee for conspiring with an LCI inmate ("Buckethead") to charge him legal fees, that claim, too, fails to survive the undersigned's § 1915(e)(2) screen. Although Plaintiff's allegations are unclear, it appears that he is alleging he paid another inmate to use the library facility or to assist him in using the facility. He seeks to hold LCI Education Administrator Beverly Baker liable for conspiring with the inmate to charge the fees. He also seeks to hold the LCI prison cashier liable for effectuating the transfer of the funds from his account to the other inmate's account. (*See* Compl. 1–2, ECF No. 1-2.) The undersigned recommends dismissal of this particular claim because it fails to contain sufficient facts that would "allow[] the [C]ourt to draw the reasonable inference that [the LCI Defendants] [are] liable for the conduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).

### ii. MCI Defendants

The undersigned likewise recommends dismissal of Plaintiff's claims against the MCI Defendants because Plaintiff has failed to state a claim with regard to these Defendants that would survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The First Amendment access to courts claims Plaintiff raises against the MCI Defendants

in this case are nearly identical to the access to courts claims he brought against the LCI Defendants in Case 878. For example, he alleges that MCI, like LCI, does not provide him adequate access to the prison's computers. He also alleges that both prisons' employees tamper with the computer so that he is unable to save his research on the computer. Magistrate Judge Litkovitz, in her March 16, 2011 Report and Recommendation, concluded that these types of allegations failed to state a claim that the defendants had violated Plaintiff's First Amendment right of access to the courts. In reaching this conclusion, she acknowledged that prisoners have a fundamental right to meaningful access to the courts, but that "[r]estrictions on the time, place, and manner in which inmates may engage in legal research and preparation of legal papers are constitutional . . . so long as the restrictions do not unreasonably frustrate the right of access to the courts." (Case 878, ECF No. 44 (citing *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985)).) She pointed out that Plaintiff had not alleged that he was denied the ability to utilize the library, access legal materials, or that he was denied the ability to do legal research and prepare his court documents. She then found that Plaintiff's claims must fail because he "has no First Amendment Right to the use of a computer . . . ." (*Id*. (citing *Lehn v. Hartwig*, 13 F. App'x 389, 392 (7th Cir. 2001) ("If prisoners have no constitutional right to a typewriter, they certainly do not have one to a computer.") (internal citations omitted); *Howard v. Webster*, 339 F. App'x 616 (7th Cir. 2009) (upholding dismissal at initial screening where plaintiff's First Amendment access to the courts claim was that he was unable to use the prison computer to access his legal documents as the library was closed); *Nicholas v. Mantello*, No. 96-2391, 1996 WL 671276, at *1 (2d Cir. Oct. 20, 1996) ("[P]laintiff's constitutional right to access to the courts was not violated by the computer suspension because that right does not include the right to use computers."); *White-Bey v. Griggs*, 43 F. App'x 792 (6th Cir. 2002) (affirming summary

judgment and concluding that inmate's grievances that he was denied access to a computer were frivolous)).)

Such is the case here. Plaintiff offers "a legal conclusion couched as a factual allegation" that he was denied meaningful access to "computers books, materials, copy machine, and legal assistance." *See Twombly*, 550 U.S. at 555. His detailed factual allegations make clear, however, that he has not been denied access to legal materials or to utilize the library to do research, but instead that he is challenging MCI's restriction of his access to prison computers and also its policy prohibiting him from removing law books from the library. (*See* Pl's Compl. 2–3, ECF No. 1-2.)

Further, Plaintiff fails to sufficiently allege that MCI's policies actually impeded his ability litigate or resulted in actual prejudice to his litigation. *See Howard*, 339 F. App'x at 618 (inmate's failure to allege that loss of access to library computer impeded ability to work on appeal supports dismissal of claim). "Essentially, a claim for denial of access to the courts has unique pleading requirements: a plaintiff must plead a case within a case, alleging the law and facts sufficient to establish both the interference with his access to the courts, and the non-frivolous nature of the claim that was lost." *Brown v. Matauszak*, 415 F. App'x 608, 612 (6th Cir. 2011). Here, Plaintiff has failed to satisfy this pleading requirement. For this same reason, his claim concerning an MCI employee's alleged theft of exhibit stickers also fails.

Likewise, Plaintiff has failed to sufficiently allege a violation of the First Amendment based upon the MCI Defendants' alleged failure to order a sufficient number of "adequate nutritional" Kosher meals. (Compl. 3, ECF No. 1-2.) Plaintiff alleges simply that Defendants either "omitt[ed] to order sufficient Kosher meals for Plaintiff, or . . . declin[ed] to provide such meals to [him] injuring his protected liberty/property interest . . . ." (*Id*.) Under the First and

Fourteenth Amendments, when reasonable, a prison must accommodate an inmate's free exercise of their religious rights. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348–49 (1987); *AbdurRaham v. Mich. Dept. of Corr,* 65 F.3d 489, 491 (6th Cir. 1995). "A prisoner alleging that the actions of prison officials violate his religious beliefs must show that 'the belief or practice asserted is religious in the person's own scheme of things' and is 'sincerely held.'" *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (quoting *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987)). Although the denial of Kosher meals could constitute a cognizable claim, here, Plaintiff fails to state a claim because he has not pled that his sincerely held religious beliefs require him to consume only Kosher food. Indeed, in his Second Motion for a Restraining Order, he indicates that when he did receive Kosher meals, that he would then supplement those meals with non-Kosher "side" items, including eggs and peanut-butter. (Pl.'s 2nd Mot. for TRO 15, ECF No. 4.) Accordingly, the undersigned recommends dismissal of Plaintiff's claims regarding the MCI Defendants' alleged failure to provide him with an adequate nutritional religious diet.

Finally, the undersigned concludes that Plaintiff has failed to state a claim with regard to his allegations concerning the MCI employee's purported conspiracy with other inmates to annoy him and interfere with his property. It is unclear whether Plaintiff is seeking to assert a First Amendment retaliation claim or an Eight Amendment conditions of confinement claim.

Under either theory, he has failed to state a claim. The elements of a First Amendment retaliation claim are:

> "(1) the plaintiff engaged in protected conduct; (2) and adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct."

13

*Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 2000). "An Eighth Amendment conditions-of-confinement claim has two elements. First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. Second, the prison official's state of mind [must be] one of 'deliberate indifference' to inmate health or safety." *Arauz v. Bell*, 307 F. App'x 923, 929 (6th Cir. 2009) (citation and internal quotation marks omitted). In the instant case, Plaintiff has failed to sufficiently plead any of the requisite elements of either claim. The undersigned therefore recommends dismissal of Plaintiff's claims relating to these allegations.

C.  **Motions for Temporary Restraining Order and Preliminary Injunction**

Plaintiff requests a temporary restraining order and a preliminary injunction. Federal Rules of Civil Procedure 65(a) and (b) permit a party to seek injunctive relief when the party believes it will suffer immediate and irreparable injury, loss, or damage. Fed. R. Civ. P. 65(a) and (b). A district court considering the extraordinary remedy of a preliminary injunction must consider and balance the following four factors:

> (1) whether the movant has shown a strong likelihood of success on the merits;
> (2) whether the movant will suffer irreparable harm if the injunction is not issued;
> (3) whether the issuance of the injunction would cause substantial harm to others;
> and (4) whether the public interest would be served by issuing the injunction.

*Overstreet v. Lexington-Fayette Urban Cty. Gov.*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Id*. "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal."

*Gonzales v. National Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) (citation omitted); *see also Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997) ("While, as a general matter, none of these four factors are given controlling weight, a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed.").

A movant's burden is even more difficult to satisfy where, as here, a prison inmate seeks an injunction to obtain affirmative relief beyond maintenance of the status quo. *See* 18 U.S.C. § 3626(a)(2) ("In any civil action with respect to prison conditions . . . [p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm."); *Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.").

After consideration of the four factors, the undersigned recommends that the Court deny both Plaintiff's motions for a temporary restraining order and preliminary injunction. For the reasons set forth above, the undersigned concludes that the record fails to establish a likelihood of success on the merits. Additionally, Plaintiff has failed to demonstrate that he would suffer irreparable harm if the injunction is not issued. Further, the records contains no evidence suggesting that the issuance of a preliminary injunction would, or would not, cause substantial harm to others. Clearly, however, issuance of the injunction would require MCI to take affirmative action beyond maintenance of the status quo and would necessarily increase costs. Moreover, the Court is unable to provide Plaintiff with some of the relief he requests. For example, the Court cannot remove Plaintiff from prison to take custody of him. The final factor once again militates against issuing the requested injunctive relief given that Plaintiff has failed

to show a constitutional violation and granting the injunction would necessarily disrupt MCI's administration of prison matters. *See Glover v. Johnson*, 855 F.2d 277, 286–87 (6th Cir. 1988) (counseling against court intrusion into the affairs of a state penal institution in the absence of the most compelling situations, such as showing of a violation of constitutional rights).

## III.

For the reasons set forth above, the undersigned **RECOMMENDS** that the Court **DISMISS** this action in its entirety under §§ 1915(e)(2) and 1915A for failure to state claim upon which relief can be granted. Consistent with this recommendation, it is further **RECOMMENDED** that Plaintiff's motions for a temporary restraining order and preliminary injunction be **DENIED**. (ECF Nos. 3 and 4.) Finally, Plaintiff's Application for Entry of Default and Motion for Default Judgment is **DENIED**. (ECF No. 2.)

## IV. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate

judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED.**

**DATE: March 14, 2012**          /s/ *Elizabeth A. Preston Deavers*
                                   **ELIZABETH A. PRESTON DEAVERS**
                                   **UNITED STATES MAGISTRATE JUDGE**